UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


SHAWN MATRICARDI,                          )          Case No. 4:04 CV 1317
                                           )
          Plaintiff                        )          JUDGE SOLOMON OLIVER, JR.
                                           )
          v.                               )
                                           )
ASTRO SHAPES, INC., *et al.*               )
                                           )
                                           )
          Defendants                       )          <u>ORDER</u>


        Plaintiff Shawn Matricardi ("Plaintiff") filed this lawsuit against his former employer,

Defendants Astro Shapes, Inc., *et al.* (collectively "Defendants" or "Company"). Currently pending

before the court are Defendants' Motion for Summary Judgment ("Mot. for Summ. J.," ECF No. 62)

on all claims and Defendants' Motion to Strike ("Motion to Strike," ECF No. 75) certain portions

of the affidavits submitted by Plaintiff in his Memorandum Opposing Defendants' Summary

Judgment Motion. For the reasons set forth below, Defendants' Summary Judgment Motion is

granted and Defendants' Motion to Strike is granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

        The Company is a manufacturer of aluminum extrusions. (Dep. of Ronald J. Berton, ("Berton

Dep.") at 41, 43.)  The Company is located in Struthers, Ohio, and employs approximately four

hundred employees.  (*Id.*; Dep. of Kelly Shaffer ("Shaffer Dep.") at 68, filed  manually.)  The

Company was party to a collective bargaining agreement with United Steelworkers Local Union

#9401 ("Union") from January 1, 2000  through December 31, 2003, which governed Plaintiff's terms and conditions of employment.  (Dep. of Pl., ("Pl.'s Dep.") at 224-25, filed manually; Aff. of Berton ("Berton Aff.") ¶ 19, filed manually; Labor Agreement Between Astro Shapes, Inc., and United Steelworkers of America, Local #9401 ("Collective Bargaining Agreement"), Defs.' Ex. 31, filed manually).  Additionally, the Company and the Union negotiated a no-fault Plant Code of Conduct and Attendance Policy ("Plant Attendance Policy") that governed Plaintiff's employment. (Pl.'s Dep. at 229; Defs.' Ex. 29, filed manually.)  Throughout Plaintiff's employment, Defendant Ronald Berton held the position of Plant Manager and Human Resources Manager, and Defendant Kelly Shaffer held the position of Human Resources Specialist. (Berton Dep. at 12; Berton Aff. ¶ 2-3; Shaffer Dep. at 5.)

Plaintiff was hired on April 3, 2000 as a Laborer.  (Pl.'s Dep. at 212; Application for Employment, Defs.' Ex. 1, filed manually.)   Plaintiff's job title changed in 2002 after he bid on an open position, and he held the position of Extra Man in the Extrusion Department throughout the remainder of his employment with the Company.  (Pl.'s Dep. at 217-18; Berton Dep. at 46.)  As an Extra Man in the Extrusion Department, Plaintiff's duties included coordinating, preparing, organizing and handling all necessary dies for the production needs of the extrusion press for each work shift. (Berton Aff.  ¶ 1-18; Pl.'s Ex. 8, Extra Man Job Description, filed manually.)

Under the negotiated Plant Attendance Policy, employees accumulate points based on attendance violations.  (Shaffer Dep. at 52-58; Plant Attendance Policy, Defs.' Ex. 29.)  The policy sets forth a schedule of progressive disciplinary action that corresponds to the number of attendance points accumulated by the employee.  (Plant Attendance Policy, Defs.' Ex. 29, at 402.)  According to that schedule, employees receive the following discipline: nine points - first written warning;

-2-

twelve points - second written warning; fourteen points - final written warning; and fifteen points - Last Chance Agreement.  (*Id.*)  After an employee receives a Last Chance Agreement, he will be terminated if he does not have perfect attendance for six months, i.e., "no late arrivals, no early departures, no call-offs and no unexcused absences." (*Id.*)  There are no current or former employees of the Company who have not been terminated when they have incurred attendance infractions in violation of a Last Chance Agreement.  (Berton Aff. ¶ 18.)

Plaintiff experienced frequent absences from the outset of his employment.  Plaintiff's first attendance offense occurred on May 7, 2000, less than one month after his first day of work. (Attendance Record, Defs.' Ex. 10, filed manually.)  Plaintiff continued to accumulate attendance points on a regular basis throughout his employment.  (*Id.*)[1]  Under the Plant Attendance Policy, Plaintiff's attendance points dropped off when he had either a calendar month of perfect attendance or the infraction became more than twelve months old.  (Shaffer Dep. at 54-55; Berton Aff., Ex. 10.)

---

[1]     As documented by Defendants in the Attendance Record, Plaintiff's attendance infractions occurred on the following dates during his tenure at Company:  (1) May 7, 2000; (2) June 9, 2000; (3) September 12, 2000; (4) October 2, 2000; (5) November 9, 2000; (6) December 22, 2000 - January 3, 2001; (7) March 7, 2001; (8) March 14, 2001; (9) April 3 - April 22, 2001; (10) June 24, 2001; (11) June 25, 2001; (12) June 26, 2001; (13) June 27, 2001; (14) June 28, 2001; (15) July 1, 2001; (16) August 8, 2001; (17) August 25, 2001; (18) August 29, 2001; (19) August 30, 2001; (20) October 1, 2001; (21) October 29, 2001; (22) November 5, 2001; (23) February 1, 2002; (24) February 28, 2002; (25) June 1, 2002; (26) June 12, 2002; (27) July 30, 2002; (28) August 21, 2002; (29) September 7, 2002; (30) September 24, 2002; (31) October 4, 2002; (32) October 9, 2002; (33) October 23, 2002; (34) March 3, 2003; (35) March 10 - April 14, 2003; (36) April 16, 2003; (37) April 22, 2003; (38) April 29, 2003.  This list of attendance record does not include Plaintiff's approved FMLA leave.  It is clear from the record that many of these attendance infractions occurred prior to the onset of Plaintiff's diabetes in June 2002 and/or the diagnosis of Plaintiff's diabetes in November 2002.

Plaintiff began suffering unexplained medical issues in June 2002.  (Pl.'s Aff. ¶ 9.) At that time, Plaintiff began experiencing pain in his left torso region, and pain extended into his legs.  (Pl.'s Aff. ¶ 6.)  Plaintiff's family physician was unable to diagnose the cause of these problems.  (*Id.*)  By October 23, 2002, Plaintiff had accumulated enough attendance points to trigger the issuance of both a second written warning and a final written warning.  (Berton Aff., Ex. 10.)  Plaintiff asked for and was granted leave under the FMLA commencing on October 24, 2002 and ending on March 2, 2003. (Shaffer Dep. at 50-51; Berton Aff., Ex. 10.) The first twelve weeks of this leave were designated as protected FMLA leave, and Defendants then allowed Plaintiff to take an additional eight weeks of leave after he exhausted the FMLA time.  (Shaffer Dep. at 50-51; Berton Aff., Ex. 10.)  Plaintiff received no attendance points during this period.  (*Id.*)

While on FMLA leave, Plaintiff was diagnosed with insulin-dependent diabetes in November 2002, and he informed the Company of his diagnosis sometime between November 2002, and March 2003.  (Pl.'s Dep.  at 261; Shaffer Dep. at 51-52.) During Plaintiff's leave of absence, some of his attendance points came off his attendance record pursuant to the attendance policy.  (Shaffer Dep. at 59-62; Berton Aff., Ex. 10.)  Plaintiff was released by his physician to return to work in March 2003, without any restrictions or limitations.  (Pl.'s Dep. At 258, 272; Shaffer Dep. at 86.)  Around the time of Plaintiff's return to work in March 2003, Berton and Shaffer discussed Plaintiff's diabetes diagnosis with Plaintiff.  (Pl.'s Dep. at 161-64.)  Plaintiff asked Berton to "take his diabetes into account."  (Pl.'s Dep. at 261-64.)  Accordingly, Berton told Plaintiff that Plaintiff could take extra breaks whenever necessary, such as to use the restroom, monitor his blood sugar, or get snacks. (Pl.'s Dep. at 164-65, 197-98, 219-220.)  At this time, Plaintiff learned from Berton that Berton himself was diabetic. (*Id.*)

-4-

After returning from his FMLA and subsequent leave of absence on March 3, 2003, Plaintiff received 1.5 attendance points on March 5, 2003, for improperly calling off work at least one hour prior to the start of his shift.  (Berton Aff. ¶ 22; Berton Aff. Ex. 1, Astro Attendance Report, March 5, 2003.)  At that time, Plaintiff's total point accumulation was 11.5.  (*Id.*)  Plaintiff missed work again from March 10, 2003, through April 14, 2003, and received 1.5 additional attendance points for failing to properly call off, taking his total attendance points to thirteen. (Berton Aff. ¶ 23; Berton Aff. Ex. 2, Astro Attendance Report, March 11, 2003.)   Plaintiff's physician identified Plaintiff's absence during this time period as due to "acute diverticulitis."  (Pl.'s Dep. at 237-38; Def. Ex. 34, Doctor's Note, manually filed.)

After returning to work on April 15, 2003, Plaintiff was absent again for personal reasons on April 16, 2003, taking his attendance point total to fourteen.  (Berton Aff. ¶ 24; Berton Aff. Ex. 3, Astro Attendance Report, April 16, 2003, manually filed.)  As a result, Plaintiff was issued a final written warning letter on April 21, 2003, for accumulating fourteen points.  (Berton Aff. ¶ 25; Berton Aff. Ex. 4, Letter dated April 21, 2003).  That April 21 written warning advised Plaintiff that he would progress to discipline in the form of a Last Chance Agreement if he accumulated fifteen points. (*Id.*)

Plaintiff missed work again on April 22, 2003, due to "not feeling well," and he received 1.5 points for the absence and improper call off.  (Shaffer Dep. at 65; Berton Aff. ¶ 26, Berton Aff., Ex. 5, Astro Attendance Report, April 22, 2003, filed manually.)  Therefore, Defendants issued a Last Chance Agreement to Plaintiff on April 23, 2003, since he had now accumulated 15.5 attendance points.  (Berton Aff. ¶ 27; Berton Aff., Ex. 6, Astro Companies' Employee Warning Report, April 23, 2003.)  This letter advised Plaintiff that any additional attendance infraction within six months

would result in termination. (*Id.*) Thereafter, Plaintiff violated the Last Chance Agreement by improperly calling off work on April 29, 2003, telling Shaffer that he was "having problems with his sugar levels." (Shaffer Dep. At 53-54; Berton Aff. ¶ 28; Berton Aff., Ex. 7, Astro Attendance Report, April 29, 2003, filed manually.)

Consequently, pursuant to the Company's and Union's collective bargaining agreement and Plant Attendance Policy, Plaintiff was notified by letter on April 30, 2003 that he was being suspended and, that "at the conclusion of the five (5) work day suspension, you will be notified in writing of your discharge." (Berton Aff. ¶ 29; Berton Aff., Ex. 8, Suspension Letter, April 30, 2003, filed manually.) During the suspension period, Plaintiff requested a meeting with Berton, Shaffer, and his Union representatives to discuss his attendance. (Shaffer Dep. at 67; Pl.'s Ex. 14, filed manually.)

The meeting was held on May 7, 2003, and Union President Toni Sevi ("Sevi"), Union Vice President Lloyd Fussnecker ("Fussnecker), Plaintiff, Berton, and Shaffer attended the meeting. (*Id.*) During that meeting, Sevi told Defendants Berton and Shaffer that, due to Plaintiff's diabetes, the Company needed to "accomodate him" and that his time off from work "should be covered under the ADA." (*Id.*) Berton responded that Plaintiff had never asked for any type of accomodations under the ADA prior to this meeting. (Berton Dep. at 114; Pl.'s Dep. at 261-64.) Shaffer explained that Plaintiff had exhausted his FMLA leave entitlement and therefore was not eligible for intermittent FMILA leave. (*Id.*) Shaffer also stated that an essential function of Plaintiff's job was coming to work, and that the Company did not view exonerating Plaintiff from application of the negotiated attendance policy as a reasonable accomodation. (*Id.*) Shaffer stated that she did not speak with anyone about Plaintiff's diabetes between the May 7,2003 suspension meeting and the May 9, 2003

grievance meeting.  (Shaffer Dep. at 74.)  However, Shaffer did speak with the Company's legal counsel about Sevi's request that Plaintiff's absences "should be covered under the ADA."  (*Id.*)  Plaintiff's employment was subsequently terminated, effective May 9, 2003, for violating the Plant Attendance Policy.  (Pl.'s Dep. at 228-29; Defs.' Ex. 34 at 270; Shaffer Dep. at 72-73; Berton Aff. ¶ 30; Berton Aff. Ex. 9, Termination Letter, May 9, 2003, filed manually.)

The Union filed Grievance No. 03-15 on behalf of Plaintiff on May 23, 2003.  (Pl.'s Dep. at 252-54; Pl.'s Ex. 14.)  A grievance meeting was held on June 9, 2003 and was attended by Sevi, Fussnecker, Brubaker, Berton, and Shaffer.  (Shaffer Dep. at 75; Pl.'s Ex. 14 at 736.)  After reviewing Plaintiff's attendance record at the meeting, the Union withdrew its grievance on Plaintiff's behalf. (Shaffer Dep. at 75; Pl.'s Ex. 14 at 736-38.)  Berton stated that the Union withdrew its grievance based on its conclusion that Plaintiff did not comply with the attendance policy, and the Company's disciplinary action was therefore proper.  (Berton Dep. at 124.)

Plaintiff filed this lawsuit on June 16, 2004.  (Supp. Compl, ECF No. 1A.).  In his Supplemental Complaint, Plaintiff makes the following claims: (1) disability discrimination in violation of Ohio Revised Code § 4112.01 et. seq. (Supp. Compl.  ¶ 11-21) and Title I of the American with Disabilities Act of 1990 ("ADA") (*id.*  ¶ 42-52) for its failure to accomodate Plaintiff; (2) retaliation in violation of the ADA and the Family Medical Leave Act ("FMLA") (*id.*  ¶ 33 - 41; 53-64); and (3) wrongful discharge in violation of Ohio's public policy discharge tort ( *id.* ¶ 22-32.)

## II.  LAW AND ANALYSIS

### A. Summary Judgment Motion Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 19 90).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.  However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment."  *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft

of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts.  *Id.*

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### B. Discrimination Claims Under the ADA and Ohio Revised Code § 4112.01[2]

The ADA prevents employers from discriminating against "qualified individuals with disabilities because of the disability of such individuals in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges or employment." 42 U.S.C. § 12112(a) (2007).  The ADA provides that a qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

---

[2]   Claims of disability discrimination under the ADA and Ohio law are subject to the same analysis. *See Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 668 (6th Cir. 2000) (holding that federal case law interpreting and applying Title VII is applicable to cases involving Ohio Revised Code § 4112.01).  The court's analysis of "the ADA" throughout this section also therefore applies to Plaintiff's Ohio Revised Code § 4112.01 claim.

To recover on a claim of discrimination under the ADA, a plaintiff must show that: "(1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accomodation; and (3) he was discharged solely by reason of his handicap." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (2007) (quoting *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (1996). Plaintiffs can establish discrimination by introducing direct or indirect evidence. Here, Plaintiff states that he can establish disability discrimination by direct or indirect evidence.

Plaintiff first states that he can introduce direct evidence of discrimination under the ADA. To meet his burden of proof, Plaintiff must introduce evidence that Defendants acknowledge relying on the plaintiff's handicap in reaching the employment decision. *Norcross v. Sneed*, 755 F.2d 113, 116 (6th Cir. 1985.) Therefore, the *McDonnell Douglas* framework discussed below is inappropriate and unnecessary because a plaintiff has already established that the employer relied on the employee's disability in making the questioned employment decision. *Monette,* 90 F.3d at 182. The determinative question then "is whether the adverse employment decision was based solely on the employee's disability, a question most often resolved by determining whether the employee is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job." *Id.* Defendants state that Plaintiff cannot establish discrimination through the use of direct evidence because no such evidence exists.

Additionally, Plaintiff states that he can show that Defendants discriminated against him based on his alleged disability by introducing indirect evidence of discrimination. Discrimination cases based on indirect evidence apply the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), burden-shifting framework. A plaintiff may establish a prima facie case

-10-

through the use of indirect evidence if he shows that: "(1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accomodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applications or the disabled person was replaced." *Macy*, 484 F.3d at 365 (quoting *Monette v. Elec. Data Sys. Corp.,* 90 F.3d at 1186. The *Macy* court noted that "we have reaffirmed that *Monette* requires a plaintiff demonstrate that 'disability was the sole reason for the adverse employment action.'" *Macy*, 484 F.3d at 364 n.2 (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444,454 (6th Cir.), *cert denied*, 543 U.S. 817 (2004). A plaintiff must introduce evidence supporting each element of the prima facie case if the action is to survive summary judgment. *See Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001); *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 386, 842 (6th Cir. 1996). Defendants state that Plaintiff cannot establish a prima face case because Plaintiff is not disabled under the Act. (Def.'s Mot. at 11-19.) Additionally, Defendants state that Plaintiff also cannot show that is otherwise qualified for the Extra Man position or that he proposed a reasonable accommodation. (*Id.*)

       If Plaintiff establishes a prima facie discrimination case, the burden shifts to the defendant to rebut the presumption of discrimination by offering a legitimate reason for its action that is unrelated to the employee's disability. *Monette,* 90 F.3d at 1185. The *Monette* court emphasized that if a plaintiff is unable to establish a prima facie claim, the burden "never shifts to the defendant." *Id.* If a defendant can satisfy its burden, the plaintiff bears the burden of establishing that the defendant's proffered reason is a pretext for unlawful discrimination. *Id.* at 1185-86. The plaintiff may show the defendant's reasons are pretext by demonstrating that these reasons: (1) had no basis

-11-

in fact; (2) did not actually motivate the decision; or (3) was insufficient to warrant the action taken. *Macy,* 484 F.3d at 366 (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

<u>1. Direct Evidence of Discrimination</u>

Plaintiff states that he can introduce direct evidence that Defendants discriminated against him based on his alleged disability.  Specifically, Plaintiff states that:

> "[h]ere there is direct evidence of discrimination; the defendants concede that they relied entirely on [Plaintiff's] medical condition in making the questioned employment decisions, i.e., assessing attendance points for absences which [Defendants] admittedly knew were due to [Plaintiff's] diabetes.  As in *Monette,* the 'defendant's own explanation for its action established that it relied on Monette's disabled status to replace him.'"

(Pl.'s Opp'n at 15.)  As discussed below, Defendant's argument that Plaintiff points to no direct evidence in the record to establish discrimination claim is well-taken.

The Sixth Circuit has held that direct evidence of disability discrimination consists of "an employer admit[ting] (or the evidence establish[ing]) that its decision was *based upon the employee's disability*."  *Monette,* at 180 (emphasis added).  Thus, the Sixth Circuit held in *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829-30 (6th Cir. 2000) that the plaintiff's evidence that her employer had stated that he would not promote the plaintiff because of her gender constituted direct evidence of gender discrimination.

Here, Plaintiff fails to cite any evidence that Defendants terminated Plaintiff's employment *because of* his alleged disability, i.e., his diabetic condition.  Plaintiff does not dispute that Defendants' letter terminating Plaintiff's employment stated that its decision was based on Plaintiff's violation of the negotiated Plant Attendance Policy, not his alleged disability.  (Berton

-12-

Aff., Ex. 9.)  Moreover, Plaintiff fails to provide any evidence that Berton, Shaffer, or any other Company employee ever told him on any occasion that he was being terminated based on his disability.  Indeed, Plaintiff does not even dispute Berton's statement that there are no current or former employees of the Company who have not been terminated when they have incurred attendance infractions in violation of a Last Chance Agreement. (Berton Aff. ¶ 18.) Plaintiff therefore has failed to show direct evidence of discrimination because he can point to no evidence in the record that Defendants terminated Plaintiff *because of* his diabetic condition.  Accordingly, Plaintiff's claims must be analyzed under the traditional *McDonnell Douglas* burden-shifting analysis discussed below.

### 2.  Evidence of Indirect Discrimination - Prima Facie Case

As discussed above, the parties dispute that Plaintiff is disabled and that he is otherwise qualified for the position, with or without reasonable accommodation.  The court does not reach the issue of whether Plaintiff is disabled because it finds that Plaintiff is not otherwise qualified for the Extra Man position, and he did not request a reasonable accommodation.

The Sixth Circuit has held that a plaintiff is first required to show he is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation from the defendant.  *Monette,* 90 F.3d at 1183.  Whether or not a duty is an essential function of a job is a fact-specific inquiry and should be based on the actual functioning of the job rather than solely on a job description.  *Hoskins v. Oakland County Sheriff's Department*, 227 F.3d 719, 726 (6th Cir. 2000).  Additionally, Plaintiff bears the "initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable."  *Monette,* 90 F.3d at 1183 (emphasis in original.) If the plaintiff establishes that a reasonable accommodation is possible, the employer bears the burden of showing that such reasonable accommodation would impose an undue hardship.  *Id.* at 1187 n.12.

-13-

*a. "Otherwise Qualified" to Perform an Essential Job Function*

Defendants state that Plaintiff cannot meet his burden of showing that he is otherwise qualified for his position under the ADA because he cannot meet its attendance requirements, which Defendants maintain is an essential job function.  Plaintiff argues that attendance is not an essential function of his job.  For the foregoing reasons, the court finds that Plaintiff's argument is not well-taken.

Plaintiff states that regular attendance is not an essential function of the Extra Man position. Plaintiff bases this conclusion on the fact that regular attendance is not listed on the Extra Man job description as an essential job function.  (Pl.'s Mem. Opposing Defs.' Mot. For Summ J. (Pl.'s Opp'n") at 4, ECF No. 70, citing Pl.'s Ex. 8, Extra Man Job Description.)  Moreover, P laintiff states that the Company has a pool of laborers called labor relief, with five labor relief persons per shift, three shifts per day.  (Berton Dep. at 36.)  This labor relief pool is assigned to a position when someone is on vacation, medical leave, or otherwise absent.  (Berton Dep. at 36.)  Therefore, Plaintiff concludes that the Company's policy of having a labor relief pool shows that attendance is not an essential job function because the Company has mechanisms and procedures in place to accomodate an employee with an irregular schedule or intermittent leave requirement.  (Pl.'s Opp'n at 4.)

Conversely, Defendants state that regular attendance is an essential function of Plaintiff's position.  (Shaffer Dep. at 86-87; Berton Aff. ¶ 3-17.)  Defendants state that Plaintiff's job as Extra Man in the Extrusion Department required regular attendance to ensure that die preparation, staging and changes occurred for the production on each shift.  (Berton Aff. ¶ 11.)  Defendants also note that Plaintiff's job duties included regularly relieving the other press employees during their

-14-

breaks and lunches.  (Berton Aff. ¶ 9.)  Additionally, Defendants maintain that if the Extra Man position is not filled on a regular basis, the press production is adversely affected, and often the daily production schedule cannot be met.  (Berton Aff. ¶ 12.)  Additionally, Defendants state that the existence of the labor relief pool does not mean that attendance is not an essential requirement of the Extra Man position.  Berton states that on each shift, the Company employs one hundred people for whom the labor relief pool fill in, and there are no occasions upon which the labor relief pool is not fully utilized during each shift.  (Berton ¶ 15.)  Therefore, the Extra Man position cannot always be filled with an individual from the labor relief pool because the Company regularly has at least five vacancies each work day to which the labor relief pool employees are assigned.  (*Id.* ¶ 16.)  Thus, Defendants maintain that, given Plaintiff's undisputed record of numerous attendance infractions, not including his approved and excused leaves of absence, he clearly could not perform the essential function of regular attendance for the position.  (Def.'s Mot. At 14.)  Accordingly, Defendant's argument that Plaintiff's repeated absenteeism in violation of the Plaintiff Attendance Policy rendered him unqualified to perform the position of Extra Man.  (*Id.*)

The Sixth Circuit and other federal courts have held that "an employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."  *Gannt v. Wilson's Sporting Goods Co.,* 143 F.3d 1042, 1047 (6th Cir. 1998) (quoting *Tyndall v. Nat'l Educ. Ctrs.,* 311 F.3d 209, 213 (4th Cir. 1994) and citing *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994); *Soletro v. Nat'l Fed'n of Indep. Bus.,* 130 F. Supp. 2d 906, 914 (N.D. Ohio 2001) (same); *Martin v. Licking County Common Pleas Court Juvenile Div.,* No. 2:03-CV-867, 2005 U.S. Dist. LEXIS 9013, at * 17 (S. D. Ohio April 22, 2005) (same); *see also Cantrell v. Nissan N. Am., Inc.,* 145 Fed App'x 99, 104-05 (6th Cir. 2006) (affirming the granting of summary judgment

to the defendant employer because the disabled plaintiff failed to show she was qualified for her position as a technician at an automobile manufacturing plant due to her chronic attendance problems, as well as her inability to get along with co-workers); *Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994), *cert. denied,* 513 U.S. 1052 (1994) (affirming the granting of summary judgment to the defendant employer and holding that an employee with a history of sporadic, unpredictable absences is not otherwise qualified under the ADA); *Ross v. Kraft Foods N. Am., Inc.,* 347 F. Supp. 2d 200, 205 (E.D. Pa. 2004) (granting summary judgment to the defendant employer on plaintiff employee's discrimination claim and stating that "required attendance is a fact of life with which nearly all employees must come to terms.").

In *Hibbler v. Reg'l Med. Ctr. at Memphis,* 12 Fed. App'x 336, 339 (6th Cir. 2001), the plaintiff complained that the defendant employer improperly counted against her the occasions when she was late for work due to her disability.  The court noted that the record indicates that Hibbler began arriving at work an hour or more late without calling her supervisor.  *Id.*  Citing *Gannt,* the court held that the defendant employer was "not required to overlook or accomodate frequent unscheduled - and unapproved - absences by [plaintiff]" because an employee that cannot meet attendence requirements is not a qualified individual under the ADA." *Id.*; *see also Waggoner v. Olin Corp.,* 169 F.3d 481, 485 (7th Cir. 1999) ("We think it is also fair to conclude that in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability.  The fact is that in most cases, attendance at the job site is a basic requirement of most jobs.").

Moreover, on similar facts to the instant case, the Seventh Circuit affirmed the district court's grant of summary judgment in *Jovanovic v. In-Sink Erator*, 201 F.3d 894, 899 (7th Cir.

-16-

20000), holding that the plaintiff factory worker's "erratic attendance record made it impossible for him to perform the essential functions of the job." The court concluded that "common sense dictates that regular attendance is an essential function in most every employment setting; if one is not present, he is usually unable to perform his job." *Id.* Furthermore, the court noted that "[t]his is especially true in a factory position, such as [plaintiff's], where the work must be done on the employer's premises; maintenance and production functions cannot be performed if the employee is not at work." *Id.* at 899-900; *see also Amadio v. Ford Motor Co.,* 238 F.3d 919, 927 (7th Cir. 2001) (holding that "[w]hile we will not say that attendance is an essential function of every employment position, [plaintiff's] position on the assembly line at [defendant's] assembly plant can easily be added to the "attendance required" list [of cases], and the plaintiff could therefore not perform the essential functions of his position based on plaintiff's absences from a job that requires regular attendance).

Here, Plaintiff does not dispute that he has had numerous attendance infractions. In fact, not including his approved and excused leaves, the record shows that he has had numerous attendance infractions over a number of years, well before he was diagnosed with diabetes. (Berton Aff., Ex. 10, Attendance Record.) Moreover, some of Plaintiff's absences after his diagnosis and return from FMLA leave were not the result of his diabetic condition. (Pl.'s Dep. at 237-38; Def.'s Ex. 34, Plaintiff's physician's note noting that Plaintiff was absent due to "acute diverticultis.") Plaintiff also does not dispute that he acquired 15.5 attendance points under the negotiated Plant Attendance Policy, was placed on a Last Chance Agreement, and then violated that Last Chance Agreement by improperly calling off work several days afterward

-17-

Additionally, Plaintiff cannot show that attendance is not an essential function of the Extra Man position.  Plaintiff does not produce any evidence to rebut Berton's statement that, without the Extra Man position filled on a regular basis, the press production is adversely affected, and often the daily production schedule cannot be met.  (Berton Aff. ¶ 12.)  And while Plaintiff concludes without evidentiary support that the existence of the labor relief pool means that attendance is not an essential job function, he produces no evidence to rebut Berton's sworn statements to the contrary.

Indeed, the only evidence Plaintiff offers to show that attendance is not an essential function of the Extra Man position is the fact that it is not listed on the job description.  However, as the Sixth Circuit noted in *Hoskins,* 227 F.3d at 726, the determination of whether a duty is an essential function should be based on the actual functioning of the job rather than a job description. Moreover, common sense dictates that, as the *Ross* court stated, 347 F. Supp. 2d at 205, regular attendance is a "fact of life" in most jobs, particularly factory jobs where the work must be done on site.

Like the numerous courts in the cases cited above, the court here holds there is no genuine issue of material fact that regular attendance is an essential function of the Extra Man position.  The case law cited above is also clear that employers cannot be expected to excuse sporadic, unpredictable absences, even if those absences are the result of a medical condition or disability. Since the undisputed facts show that Plaintiff acquired 15.5 points under the negotiated Plant Attendance Policy, was placed on a Last Chance Agreement, and then violated that Last Chance Agreement by improperly calling off work several days afterward,  there is no genuine issue of material fact that Plaintiff cannot show he was otherwise qualified under the ADA for the Extra Man position.

-18-

i. Proposing a Reasonable Accommodation

*(a) Plaintiff's Affidavit*

As a preliminary matter, the court notes that Defendants' Motion to Strike asks the court to strike certain statement in Plaintiff's affidavit, including paragraph 17, which is related to Plaintiff's alleged request for leave and accommodations for his diabetic condition *prior* to the suspension meeting. (Defs.' Mot. To Strike at 7; Defs.' Mot. To Strike Reply ("Defs.' Reply") at 8-10.) Specifically, the court notes that Plaintiff states that, prior to the May 7, 2003 suspension hearing, Berton and Shaffer "refused to create any exceptions to the attendance policy for me. They furthermore refused to grant any leave of absence, citing the Family Medical Leave Act of 12 weeks which I had already used." (Pl.'s Aff. ¶ 17.) Defendant argues that Plaintiff's statement in his affidavit is directly contradicted by Plaintiff's deposition. (Defs.' Mot. to Strike at 7; Defs.' Reply at 8-10.)

The Sixth Circuit has held that a party cannot contradict his earlier testimony with a contrary affidavit after the opposing party has moved a court for summary judgment. *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir. 1986). Moreover, "[i]f a witness, who has knowledge of a fact, is questioned during her deposition about that fact, she is required to 'bring it out at the deposition and [cannot] contradict her testimony in a subsequent affidavit. *Holt v. Olmsted Township Bd. Of Trs.,* 43 F. Supp. 2d 812, 817 (N.D. Ohio 1998). However, a court can consider an affidavit that merely supplements testimony given in a deposition. *Soletro v. Nat'l Fed. Of Indep. Bus.,* 130 F. Supp. 2d at 910 (citing *S.W.S. Erector, Inc., v. Infax, Inc.,* 73 F.3d 489, 496 (5th Cir. 1996).

Here, the undisputed facts show that, after his return from FMLA leave, Plaintiff asked that Defendants "take his diabetes into account." This request obviously does not constitute a request

-19-

for exemption from the attendance policy or additional leave because Plaintiff did not explicitly ask for it.  *See, e.g. Clark v. Whirlpool Corp.,* 109 Fed. App'x at 755 (affirming summary judgment where "[t]he district court deemed critical the undisputed fact that the plaintiff did not ask for any accommodation beyond furnishing a conveyor, which was granted.  No other adjustment in work function or duties was requested.); *Jovanovic,* 201 F.3d at 899 ("[w]e believe that the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches.").  The undisputed facts show that Defendants "took Plaintiff's sugar into account" by allowing him to take breaks, get snacks, and check his blood sugar while at work.  (Pl.'s Dep. at 162-65; 206.)

However, when Plaintiff was asked directly in his deposition if he had requested an exemption from the attendance policy or leave from Shaffer or Berton prior to the suspension meeting, Plaintiff stated that he "didn't specifically ask for that."  (Pl.'s Dep. at 263.)  Based on a review of Plaintiff's deposition, it is clear that Plaintiff did *not* ask Berton or Shaffer for a leave of absence or for the Company to create any exceptions to the attendance policy prior to the suspension meeting.  (Pl.'s Dep. at 261-64.)  Accordingly, the court hereby grants the Defendants' motion to strike paragraph seventeen of Plaintiff's Affidavit and disregard Plaintiff's statement that, prior to the suspension meeting, Plaintiff had asked the Company for more leave or to be exempted from the attendance policy because these statements are directly contradicted by Plaintiff's deposition testimony.

### (b) Proposed Accommodation Request at the Suspension Meeting

As discussed previously, Plaintiff has the burden of proposing an accommodation and showing "that *that* accommodation is objectively reasonable."  *Monette,* 90 F.3d at 1183 (emphasis

-20-

in original).  At the suspension meeting, Sevi stated that Plaintiff's attendance infractions should be "excused under the ADA."  (Shaffer Dep. at 62.)  Plaintiff construes this request to mean that he asked Defendants to accomodate his alleged disability by removing attendance points from Plaintiff's record.  (Pl.'s Opp'n at 25.)[3]     Defendants state that, even if Plaintiff articulated such an accommodation request, the request was not reasonable as a matter of law.  For the foregoing reasons, the court finds that Plaintiff's argument is not well-taken.

Plaintiff states that Sevi's request at the suspension meeting that the Company remove points from Plaintiff's attendance record constitutes a reasonable request.  Plaintiff bases this statement on the fact that Defendants did not assess attendance points to other employees who were on intermittent FMLA leave due to medical problems.  (Pl.'s Opp'n at 22.)  Moreover, Plaintiff states that removing points from Plaintiff's attendance record would not cause Defendants undue hardship.

Defendants state that Plaintiff's argument that his requested accommodation was reasonable lacks merit.  First, Defendants note that the Company did not assess attendance points to the employees Plaintiff refers to because these employees had intermittent leave that was covered by the FMLA, and Defendants were therefore required by law not to assess attendance points for such excused absences.  (Defs.' Reply at 13.)  Additionally, Berton stated that removing points from Plaintiff's record would constitute an undue hardship to the company because attendance is an essential job function, and other employees might subsequently ask for similar consideration.  (Berton Dep. at 88-89).  The Company negotiated with the Union and subsequently adopted  its "no-fault"

---

[3]     In his Opposition brief, Plaintiff appears to suggest without citing any evidentiary support that he requested additional leave at the suspension meeting. (Pl.'s Opp'n at 21.) In the absence of any evidentiary support for Plaintiff's assertion, the court finds there is no basis to find that Sevi's request on Plaintiff's behalf that Plaintiff's absences "be excused by the ADA" as a request for another leave.

-21-

absence policy precisely to avoid such a "snowball effect." (*Id.* at 89-92.)  Significantly, there are no current or former employees of the Company who have not been terminated when they have incurred attendance infractions in violation of a Last Chance Agreement. (Berton Aff. ¶ 18.) Finally, Shaffer told Plaintiff and the Union representatives at the meeting that an essential function of Plaintiff's job was going to work, and the Company did not view exonerating Plaintiff from the application of the negotiated attendance policy as a reasonable accommodation. (Berton Dep. at 114; Pl.'s Dep. at 261-64.)

The court finds that Plaintiff's argument that removing Plaintiff's attendance points is a reasonable accommodation, based on the fact that employees with intermittent FMLA did not incur attendance points, is without merit.  A similar argument was advanced in *Monette*, where the plaintiff argued that other employees had been afforded leave while their jobs were held open.  However, the Sixth Circuit pointed out that "the defendant was *required by law* to hold the employee's position open" under the FMLA, and held that this FMLA treatment would not create an inference of discrimination.  *Id.* (emphasis added).  That same logic applies here.  Specifically, where other Company employees were able to take intermittent FMLA leave, Defendants were prohibited by the FMLA from assessing any attendance points for those FMLA-covered intermittent absences.  *See* 29 C.F.R. § 825.200 ("employers cannot use the taking of FMLA leave as a negative factor in employment actions ... nor can FMLA leave be counted under 'no fault' attendance policies.").  In contrast, Plaintiff had exhausted his FMLA leave, and the company therefore applied its negotiated Plant Attendance Policy to him in the same way it applied the policy to all its employees.

Additionally, the court finds that Plaintiff's statement, made without any evidentiary support, that removing points from Plaintiff's attendance record would not be an undue hardship to

-22-

the Company is similarly without merit.  Defendants provided evidence, which Plaintiff did not refute, that removing points from Plaintiff's attendance record would cause the Company undue hardship. Finally, an employer need not exempt an employee from performing an essential function of his job.  *Brickers v. Cleveland Bd. of Educ.,* 145 F.3d 846, 850 (6th Cir. 1998).  As discussed above, attendance is an essential function of Plaintiff's job.  Plaintiff's request for relief from the no-fault attendance policy negotiated by the Union and the Company and subsequently adopted by the company goes beyond reasonable accommodation.

Construing the evidence in a light most favorable to Plaintiff, the court finds that Plaintiff has not met his burden of showing he could perform the essential duties of the Extra Man position, with or without a reasonable accommodation.  Plaintiff's requested accommodation is not objectively reasonable because it would require the Company to exempt Plaintiff from performing one of his essential duties, a level of accommodation that is not required under the ADA.  Therefore, because there is no genuine issue of material fact that Plaintiff is not otherwise qualified for the Extra Man position and that his accommodation request is not objectively reasonable, Defendants' motion for summary judgment on Plaintiff's claim of disability discrimination under the ADA and Ohio Revised Code § 4022 *et seq.* is granted.

### C.  Retaliatory Discharge Claims Under the ADA and FMLA

Plaintiff states that he can make a prima facie case of retaliatory discharge under the ADA and the FMLA.  For the foregoing reasons, the court holds that there is no genuine issue of material fact that Plaintiff cannot establish a prima facie case of retaliatory discharge under the ADA or FMLA. Accordingly, Defendants are entitled to summary judgment on these claims as a matter of law.

-23-

### 1. Retaliatory Discharge under the ADA[4]

Plaintiff states that he can establish a case of retaliatory discharge under the ADA. As a preliminary matter, the court notes that a plaintiff need not be a qualified individual with a disability to pursue a retaliation claim. *See Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 188 (3d Cir. 2003); *Selenke v. Med. Imaging of Colorado,* 248 F.3d 1249, 1264 (10th Cir. 2001). As discussed previously, the court did not reach whether Plaintiff is disabled under the ADA or Ohio Revised Code § 4112.01 *et seq.*

Plaintiff bases this retaliation claim on indirect evidence. To establish a prima facie retaliation claim under the ADA, Plaintiff must show that: (1) he engaged in a protected activity; (2) Defendants had knowledge of Plaintiff's exercise of his protected activity; (3) Defendants thereafter took an employment action adverse to Plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. *DiCarlo v. Potter, Postmaster General,* 358 F.3d 408 (6th Cir. 2004). Once a prima facie case is established, the burden of producing some non-discriminatory reason falls upon the defendant. *Id.* at 420. If the defendant demonstrates such reason, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation. *Id.* Here, the parties dispute whether a causal connection exists between Plaintiff's exercise of a protected activity on May 7, 2003 (Sevi's request on Plaintiff's behalf to excuse Plaintiff's attendance violations time under the ADA), and the adverse employment action (Plaintiff's termination) on May 9, 2003.

---

[4]      As noted previously, the court's analysis of Plaintiff's ADA and Ohio Revised Code § 4112.01 *et seq.* claims are the same.

Plaintiff states that the fact that he was terminated only two days after he made an allegedly reasonable accommodation request establishes a causal connection based on the temporal proximity between the protected activity and Plaintiff's termination.  (Pl.'s Opp'n at 29.)  However, Defendants state that on April 30, 2003 Plaintiff was suspended in writing for his attendance infractions and informed that, at the conclusion of the five-day suspension, Plaintiff would be notified in writing of his discharge. (Pl.'s Ex. 6 at 271; Berton Aff., Ex.8. )  Therefore, Defendants argue that Plaintiff cannot establish the causal connection between the accommodation request and his termination because the undisputed facts show that the Company's decision to terminate Plaintiff occurred on April 30, well *before* Sevi made the accommodation request on Plaintiff's behalf at the May 7, 2003 suspension meeting.

The court finds that Defendants' argument that Plaintiff cannot establish a causal connection between engaging in a protected activity and an adverse employment action is well-taken. The Sixth Circuit recently held that a diabetic plaintiff failed to establish a causal connection between her exercise of a protected activity, the filing of an OSHA complaint, and the company doctor's decision two months afterward to "ground" the plaintiff from high rider work, because the company doctor was not aware of the existence of the plaintiff's OSHA complaint at the time he made his decision. *Mohr v. Hoover Co.,* 97 Fed. App'x 620, 625-26 (6th Cir. 2004); *see also Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001) (affirming the granting of summary judgment on a retaliatory discharge claim and holding that nine days temporal proximity was insufficient to show a causal connection between the employee's lawsuit for sexual harassment and employee's demotion because the supervisor did not learn of the lawsuit until one day after announcing the decision).

-25-

Here, like the defendants in *Mohr* and *Breeden*, Defendants also were unaware of Plaintiff's engagement in a protected activity since it was made over a week *after* Defendants decided to terminate Plaintiff's employment based on attendance infractions. Accordingly, after construing the evidence in the light most favorable to Plaintiff, the court finds that there is no genuine issue that Plaintiff fails to establish a prima facie case of retaliatory discharge under the ADA. Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliatory discharge claims under the ADA and Ohio Rev. Code 4022 *et seq.* as a matter of law.

### 2. Retaliatory Discharge under the FMLA

Plaintiff also claims that he can establish a case of retaliatory discharge under the FMLA. Plaintiff bases this retaliation claim on indirect evidence. The Sixth Circuit has held that the *McDonnell-Douglas* burden-shifting framework should be applied to FMLA retaliation claims that are based upon indirect evidence. *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003) (citing *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001). To establish a prima facie case of retaliation under the FMLA based on indirect evidence, Plaintiff must establish: (1) that he or she engaged in a statutorily protected activity; (2) that the employer knew of his or her protected activity; (3) that he or she suffered an adverse employment action; and (3) that a causal connection existed between his protected activity and the adverse employment action. *Skrjanc*, 272 F.3d at 314.

If Plaintiff can make a prima facie case, Defendant then has the burden of articulating a legitimate nondiscriminatory reason for the adverse employment action. *Gibson*, 336 F.3d at 513. Finally, Plaintiff must show that this nondiscriminatory reason was in fact pretextual and that unlawful discrimination was the real reason for the adverse action. *Id.* Here, the burden does not shift

to Defendants because Plaintiff cannot establish a prima facie case of retaliatory discharge under the ADA for the foregoing reasons.

a. *Prima Facie Case*

The parties do not dispute that Plaintiff engaged in a statutorily protected activity by taking FMLA leave, and that Defendants knew that Plaintiff engaged in this protected activity. Rather, the parties dispute whether a causal connection exists between Plaintiff's protected activity and the adverse employment action.  Plaintiff asserts that temporal proximity alone is indirect evidence sufficient to establish a causal connection between Plaintiff's exercise of his FMLA rights and Defendants' decision to terminate Plaintiff. (Pl.'s Opp'n at 15.)  However, Defendants state that Plaintiff cannot establish a causal connection based on temporal proximity alone because Plaintiff was terminated four months after he exhausted his FMLA leave entitlement and eight weeks after he returned from his extended leave of absence.

The court finds that, in the absence of other evidence of a causal connection between Plaintiff exhausting his FMLA leave and Defendants terminating his position, this fourth-month temporal proximity is insufficient to justify an inference of retaliation.  Generally, the Sixth Circuit holds that a plaintiff may not present a prima facie retaliation case based solely on temporal proximity, especially when a plaintiff's claim is otherwise weak.  *See Nguyen v. City of Cleveland,* 229 F.3d 559, 566-67 (6th Cir. 2000) (citing *Cooper v. City of North Olmsted,* 795 F. 2d 1265 (6th Cir. 1986) to hold that the plaintiff failed to establish a prima facie retaliation case because temporal proximity, a period of four months, did not support an inference of retaliatory discrimination when the plaintiff's retaliation case was otherwise weak and there was substantial evidence supporting defendant's version of the events).  Moreover, "evidence that the employer had been concerned about

-27-

a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity."  *Carpenter v. Kaiser Permanente,* No. 1:04 CV 1689, 2006 U.S. Dist. LEXIS 69564 (N.D. Ohio Sep. 27, 2006) (quoting *Sosby v. Miller Brewing Co.,* 415 F. Supp. 2d 809, 822 (S.D. Ohio 2005)).

However, an exception to this general rule exists where the temporal proximity between the protected activity and the adverse employment action is "acutely near in time," and in such cases that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.  *See DiCarlo* (three weeks between protected activity and adverse employment sufficient proximity); *Skrjanc,* 272 F.3d at 309 (one month between plaintiff requesting FMLA leave and the employer terminating him was sufficient temporal proximity to show a causal connection so as to create an inference of retaliatory motive).

Here, Defendants terminated Plaintiff four months after he exhausted his FMLA leave and eight weeks after he returned from work, far longer than the "acutely near in time" three-week period that existed in *DiCarlo* and the one-month period that existed in *Skrjanc.*  Moreover, Plaintiff's prima facie retaliation case is weak because he does not present any evidence other than temporal proximity to establish a causal connection between Plaintiff taking his FMLA leave and his subsequent termination.  Thus, the facts here are similar to those present in *Cooper,* where the court held that four months temporal proximity was insufficient to show a causal connection between the protected activity and adverse employment decision, especially when the plaintiff's case was otherwise weak.  Moreover, any significance that the court might attach to this four-month temporal proximity is undercut here because, like the defendants in *Carpenter,* Defendants documented

-28-

concerned about Plaintiff's numerous attendance problems for the past several years, far before he engaged in a protected activity under the FMLA.  (Berton Aff., Ex. 10.)

Therefore, after construing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact that Plaintiff cannot establish a prima facie claim of retaliatory discharge under the FMLA.  Accordingly, Defendant is entitled to summary judgment on Defendant's FMLA retaliatory discharge

### D.  Ohio's Public Policy Wrongful Discharge Claim

Plaintiff states that there is no genuine issue of material fact that he has made a public policy wrongful discharge claim as stated in *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990) (Pl.'s Opp'n at 30-31.)  Plaintiff can establish a prima facie public policy wrongful discharge claim under *Greeley* and its progeny if he can show: 1) he was an at-will employee; 2) that a clear public policy existed and was manifested in a state or federal constitution; 3) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; 4) the plaintiff's dismissal was motivated by conduct related to the public policy; and 5) the employer lacked overriding legitimate business justification for the dismissal.

Defendants argue that Plaintiff's claim is barred as a matter of law because he cannot establish that he is an at-will employee.  (Defs.' Mot. at 20-21; Defs.' Reply at 18) (citing *Haynes v. Zoological Society of Cincinnati*, 652 N.E.2d 948 (syllabus) (Ohio 1995), holding that "[i]n order for an employee to bring a cause of action pursuant to *Greeley v. Miami Valley Maintenance Contractors, Inc.,* that employee must have been an employee at will.)  Defendants also correctly state that the following material facts are undisputed: (1) Plaintiff was a member of a bargaining unit

-29-

covered by a collective bargaining agreement between the Company and United Steelworkers Local Union No. 9401 (Pl.'s Dep. at 116, 224-226; Berton Aff. ¶ 19); (2) a grievance was filed on Plaintiff's behalf challenging his termination (Pl.'s Dep. at 254-57; Berton Aff. ¶ 20); and (3) a grievance meeting was held between the Company and the Union concerning Plaintiff's termination, at which time the grievance was withdrawn by the Union. (Berton Aff. ¶ 21; Shaffer Dep. at 75-76.)

The court finds that Defendants' argument is well-taken. In the wake of *Haynes*, courts regularly and summarily dismiss "public policy" claims of "wrongfully discharged" unionized workers. *See, e.g., Schwab v. Delphi Packard Elec. Sys.,* No. 98CA7045, 2003 Ohio App. LEXIS 4387, *26 (Ohio Ct. App. Sept. 12, 2003) (holding that, due to appellant's union member status, he is clearly not an at-will employee, and the *Greeley* public policy exception is not applicable); *Renner v. E. Mfg. Corp.,* No. 2001-P-135, 2002 Ohio App. LEXIS 6471 (Ohio Ct. App. Dec. 6, 2002) (same); *Strausbaugh v. Ohio Dep't of Transp.,* 782 N.E.2d 92, 100 (Ohio Ct. App. 2002) ("*Greeley* claims are limited to employee-at-will situations that involve discharge or disciplinary action"). The undisputed facts show that Defendants were covered by a collective bargaining agreement, that the Union filed a grievance on his behalf, and that the Union subsequently withdrew the grievance. Plaintiff argues, without citing any legal authority to support the proposition, that he was an employee-at-will for the purposes of his public policy charge claim because his Union withdrew Plaintiff's grievance of his discharge without Plaintiff's consent. Moreover, the court could not locate such legal authority to support Plaintiff's argument. Accordingly, there is no genuine issue of material fact that Plaintiff's claim is barred by Ohio law, and Defendant is therefore entitled to judgment as a matter of law.

### III.  MOTION TO STRIKE

Defendants asked the court to strike ten paragraphs from Plaintiff's Affidavit and eleven paragraphs from Dr. Mishr's Affiddavit.  (Defs.' Mot to Strike at 4-7.) The court grants the Motion as to paragraph seventeen of Plaintiff's Affidavit as previously discussed and denies the Motion as to the remaining paragraphs and Dr. Mishr's Affidavit.

The court did not reach the issue of whether Plaintiff was disabled under the ADA or Ohio Rev. Code 4022 *et seq.*  Therefore, to the extent that Defendants take issue with the paragraphs in the affidavits of Plaintiff or Dr. Mishr that were intended to establish that Plaintiff was disabled within the meaning of the ADA, this issue is moot.  Accordingly**,** the court grants Defendants' motion in part and denies it in part as discussed above.

### IV. CONCLUSION

For the reasons stated above, the court grants Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.  (ECF No. 62.)  on the following claims: (1) Disability discrimination claims under the ADA and Ohio Revised Code § 4112.01 *et seq.*,; (2) Retaliatory discharge claims under the ADA and FMLA; and (3) Ohio's public policy wrongful discharge claim under *Greeley.*  The court grants Defendants' Motion to Strike in part and denies it in part. (ECF No. 75.)

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 29, 2007

-31-